**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**JULETTE DAVIS,**

**Plaintiff,**

**v.**

**DISTRICT OF COLUMBIA,**

**Defendant.**

**Civil Action No. 07-1260 (RBW)**

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**BACKGROUND**

Historically, in IDEA cases in this Court, Plaintiff's counsel has often received communications from different attorneys representing the Defendant requesting information regarding administrative proceedings, including the dates of hearings and HODs.[1] Plaintiff's counsel typically responds to such requests within one business day, answering questions and faxing basic documents, out of courtesy and in the interest of expediency.

The Plaintiff filed her Complaint in this case on July 16, 2007. On July 24, 2007, Defendant's counsel sought an extension of time to file the Answer. Exhibit 2 at 1. When consenting to that extension, Plaintiff's counsel asked that the Defendant nonetheless order the administrative record as soon as practical. Exhibit 3. Defendant's counsel agreed to do so, and asked Plaintiff's counsel for J.D.'s full name and date of birth, which Plaintiff's counsel then provided, on July 26, 2007. Exhibits 4-6. Defendant's counsel has made no further requests for information about J.D. or the administrative proceedings, and has made no indication that there

[1] For example, in almost every case, Defendant's counsel requests the full name of the child, as that information cannot be stated in the complaint.

has been any difficulty in obtaining the administrative record.

The Court granted the Defendant's consent motion for the extension. Instead of an answer, the Defendant filed it's Motion to Dismiss under Rule 12(b)(1) based on an alleged absence of jurisdiction.

## ARGUMENT

### I. THE DEFENDANT HAS MADE FALSE STATEMENTS REGARDING THE FACTS AND REGARDING THE COMPLAINT

The falsehood at the heart of the Defendant's Motion – a demonstrably false statement, which the Defendant knew to be false or about which the Defendant made no effort to determine the truth – is plainly stated at the top of page 8 of the Motion: "Plaintiff has Failed to exhaust her Administrative Remedies." To the contrary, as stated in the Complaint:

> The Plaintiff has participated in an impartial administrative hearing regarding the claims made in [the] Complaint, among others, conducted by the District of Columbia Schools State Enforcement and Investigation Division. The administrative Hearing Officer granted the Plaintiff some of her requested relief and denied her the relief requested in [the] Complaint.

Complaint at ¶3; see Exhibit 1.

If the Defendant did not know of the HOD attached hereto, it should have. The Plaintiff announced its existence in the passage of the Complaint quoted above. Defendant's counsel obtained from Plaintiff's counsel J.D.'s full name and the date of the hearing, the only information requested. Either the Defendant found the HOD from that information, or it failed to conduct the most basic investigation, including the very simple step of requesting a copy of the HOD from Plaintiff's counsel.[2]

In addition to the fundamental falsehood in the Motion, the Defendant makes at least

---

[2] Plaintiff's counsel does not typically attach the underlying HOD to an IDEA complaint, as attachments to complaints are disfavored. See LCvR 5.1(g).

three false statements regarding the contents of the Complaint.[3] Despite quoting the statement in the Complaint that the underlying hearing "regard[ed] the claims made in [the] Complaint," the Defendant falsely states that the Complaint contains no mention of "how [the hearing] relates to this action." Motion at 6. Despite quoting the statement in the Complaint that "the administrative Hearing Officer…denied [the Plaintiff] the relief requested in [the] Complaint," the Defendant falsely states as follows:

> [N]owhere is it even asserted that the Plaintiff is an aggrieved party[.]
> ***
> Nowhere in the complaint…is there any assertion – much less any showing – that the Plaintiff has yet exhausted those required administrative remedies.

Motion at 7, 8.

## II. THE DEFENDANT HAS OFFERED NO SUPPORT FOR ITS RULE 12(b)(1) CLAIM OF LACK OF JURISDICTION

The Defendant has requested dismissal for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), but though it bears the burden of production at a minimum, it has offered absolutely no evidence of the absence of jurisdiction, whether for a failure to exhaust or for any other reason.

"Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it…If the defendant meets its burden, the plaintiff then bears the burden of pleading and proving facts supporting equitable avoidance of the defense." Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1996)(internal citation omitted). The Defendant has made no effort at all to meet that burden in its Motion. Instead, it simply attacks the Complaint. In the section of the Motion one would most expect to find the

[3] The Defendant has recently filed several motions nearly identical to this one in several cases in which the plaintiff is represented by Plaintiff's counsel. In some of the cases, as in this one, there appears to have been no effort to ensure that the Defendant's representations to the court fit the facts of the particular case. For that reason, among others, Plaintiff's counsel is currently drafting Rule 11 motions for these cases.

Defendant's evidence, the section entitled "Plaintiffs have Failed to exhaust their Administrative Remedies," there is no shred of evidence, or even an indication of an attempt to find evidence.

Theoretically, the Defendant might have met its burden in a number of ways. It might have presented an affidavit from an appropriate person stating that no administrative decision had ever been issued regarding this child. It might have presented copies of correspondence to the Plaintiff requesting relevant information, to which the Plaintiff had not responded.

The Defendant did not present any such thing to support its claim that the Plaintiff did not exhaust her administrative remedies for two very good reasons: 1) the Plaintiff did in fact exhaust her administrative remedies; and 2) the Defendant made absolutely no inquiry into the question before filing its Motion.

Because the Defendant has offered no evidence whatsoever in support of its Rule 12(b)(1) claim of lack of jurisdiction, and has made no inquiry whatsoever, the Court should deny the Motion.

## III.    THE PLAINTIFF'S APPROPRIATELY PLED HER COMPLAINT

While the Defendant has requested dismissal "pursuant to Fed. R. Civ. P. 12(b)(1)," it has made absolutely no showing of jurisdictional inadequacy and has only obliquely alleged that the Court lacks jurisdiction. Instead, the Defendant requests dismissal on the grounds of perceived inadequacies in the phrasing of the Plaintiff's Complaint, an argument which must fail for at least two reasons. First, the absence of the Defendant's desired information – the date of the Plaintiff's administrative hearing – in the Complaint does not prove or even suggest the absence of a hearing. Second, the Plaintiff was not required to meet the Defendant's heightened standards of specificity in pleading her Complaint, which was and is sufficient.

**A. The Plaintiff Properly Pled This Court's Jurisdiction Under 28 U.S.C. § 1331.**

"This is a claim for injunctive relief and declaratory judgment brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*." Complaint at ¶ 1. Electing to ignore this sentence, the Defendant challenges the Court's jurisdiction under 28 U.S.C. § 1331, stating that "plaintiff has failed to cite any independent federal statute in her jurisdictional paragraph. Accordingly, this Court has no jurisdiction over the plaintiff's claims." Motion at 5. This argument is simply ridiculous.

Were the Court to assume that the Defendant lacked proper notice of the underlying federal substantive law governing the Plaintiff's complaint, the Defendant's five-page treatment of IDEA procedures would be mystifying.[4] See Motion at 5-9. However, since the Defendant was clearly aware of the applicable federal laws, and since the Plaintiff's claims arise under those laws in the clearest Constitutional sense of that phrase, 28 U.S.C. § 1331 gives this Court subject matter jurisdiction over the Plaintiff's Complaint: that the District of Columbia Public Schools ("DCPS") violated the IDEA.

**B. The Failure to Exhaust Administrative Remedies is an Affirmative Defense.**

The Defendant, declaring in its Motion that the Plaintiff has failed to show exhaustion of administrative remedies, does not acknowledge that the failure to exhaust administrative remedies is an affirmative defense, which the Plaintiff is not required to anticipate in her complaint. Mondy v. Secretary of Army, 845 F.2d 1051, 1059 note 3 (D.C. Cir. 1988) (MacKinnon, J. concurring); see also Bowden, 106 F.3d 433, 437.

The Supreme Court was recently faced with a circuit court's judgment interpreting the

[4] The Defendant incorrectly states in its Motion that the Plaintiff brought her Complaint under IDEIA, the Individuals with Disabilities Education Improvement Act of 2004, the act that amended the Individuals with Disabilities Education Act. However, 20 U.S.C. § 1400 et seq. remains the "Individuals with Disabilities Education Act." See e.g., Jester v. Gov't of the Dist. Of Columbia, 474 F.3d 820, 821 (D.C. Cir. 2007)(referring repeatedly to the requirements of the Individuals with Disabilities Education Act (IDEA)").

Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997 et seq. ("PLRA") to require prisoners to plead exhaustion of administrative remedies in their federal court complaints. Jones v. Bock, 127 S. Ct. 910 (2007). Lower courts had inferred an exhaustion pleading requirement from language in the PLRA stating that "[n]o action shall be brought with respect to prison conditions under 42 U.S.C. § 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress had gone further still with regard to prisoner complaints by requiring judicial screening of inmate complaints, which may be dismissed sua sponte absent any responsive pleading. See 28 U.S.C. §§ 1915A(a)-(b).

Within that context, a unanimous Court rejected the circuit's heightened pleading standard:

> We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints. We understand the reasons behind the decisions of some lower courts to impose a pleading requirement on plaintiffs in this context, but that effort cannot fairly be viewed as an interpretation of the PLRA. … No mere omission …which it may seem wise to have specifically provided for, justifies any judicial addition to the language of the statute. Given that the PLRA does not itself require plaintiffs to plead exhaustion, such a result must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.

Jones, 127 S. Ct. at 921-22. (internal quotations and citations omitted.)

The Defendant has offered absolutely no support for its contention that the Plaintiff must plead exhaustion, much less any reason to change established law. The Defendant's argument for dismissal on that basis is therefore frivolous, and should be rejected.

**C.  There Is No Heightened Pleading Requirement in IDEA Cases.**

The Plaintiff stated, in her initial complaint, inter alia, the following basis for this Court's jurisdiction:

> The Plaintiff has participated in an impartial administrative hearing regarding the claims made in [the] Complaint, among others, conducted by the District of Columbia Schools State Enforcement and Investigation Division. The administrative Hearing Officer granted the Plaintiff some of her requested relief and denied her the relief requested in [the] Complaint.

Complaint at ¶3. The Defendant's deliberately obtuse reading notwithstanding, the Plaintiff appropriately stated this Court's grounds for jurisdiction.[5]

The Supreme Court of the United States has stated – unanimously – that Federal Rule of Civil Procedure 8(a) means what it says, and that the specificity requirements of Federal Rule of Civil Procedure 9(b) are not subject to enlargement absent an act of Congress. See, e.g., Hill v. McDonough, 126 S. Ct. 2096, 2103 (2006), ("Specific pleading requirements are mandated by the Federal Rules of Civil Procedure, and not, as a general rule, through case-by-case determinations of the federal courts").

The Defendant offers no support for its contention that the Plaintiff must plead exhaustion with specificity, including the "nature, time or place of any…hearing," in addition to other information, in order to meet the Federal Rules' requirement that her Complaint contain "a short and plain statement of the grounds upon which the court's jurisdiction depends." Fed. R. Civ. P. 8(a). Instead, the Defendant relies solely on the IDEA's "right to sue" provision:

> Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

20 U.S.C. § 1415(i)(2)(A).

Nowhere in this provision or elsewhere in the IDEA does Congress attempt to establish

[5] "Moreover, the court is not limited to the allegations contained in the complaint… Instead, to determine whether it has jurisdiction over the case, the court may consider materials outside the pleadings." Lipsman v. Sec'y of the Army, 257 F. Supp. 2d 3, 6 (D.D.C. 2003)(internal citation omitted). The Plaintiff attaches as exhibits the HOD in question. Exhibit 1.

heightened pleading standards for such cases.[6] Furthermore, it does not appear that courts have endeavored to establish such heightened requirements, particularly as the Defendant has not cited any authority for its proposed reading. Given the Supreme Court's clear statement on the subject, it is hard to imagine that any court would.

**D. The Defendant's Argument Misrepresents Applicable Law**

The Defendant's reliance on Federal Rule of Civil Procedure 9(f) is both misplaced and misleading. From within the only Federal Rule where a heightened pleading standard might be found, the Defendant cites a rule which courts have repeatedly held not to require time and place to be pled with specificity.[7] See e.g. Supreme Wine Co. Distributors of New England, 198 F. Supp 318, 320 (D. Mass. 1961)("Rule 9(f) does not require specificity in pleading time and place, and the indefiniteness of the allegations made has been held not to justify dismissal of the action.")(internal citation omitted).

Furthermore, the "fatal deficiency" cited by the Defendant from Wade v. Washington Metropolitan Area Transit Authority, 2005 Westlaw 1513137 (D.D.C. 1995) was that plaintiff's failure to include, in her third amended complaint, any statement of the time and place at which alleged incidents of sexual harassment occurred, rendering one of her five claims "insufficient, as it does not give [the defendant] fair notice of the claim against him." Id. Nowhere does the Defendant contend that it lacks sufficient notice of the claims against it – the overriding principle of "notice pleading" – instead alleging, without basis, that the Plaintiff's complaint should be dismissed.[8]

---

[6] This section likewise refers to this complaint as "a civil action" and not an "appeal", yet the Defendant seems to believe that such an identification is a necessary component of the complaint. See Motion at 7 ("the Complaint, even if read most favorably to Plaintiffs, nowhere indicates that it is an "appeal" of *any* HOD…").
[7] Furthermore, the Plaintiff's complaint – that DCPS has failed to provide her child a free appropriate public education – was accompanied by material averments of time and place. See Complaint ¶¶ 7-11, 14-20, 22, 27.
[8] The Defendant does state that it was unable to determine if it could raise a valid statute of limitations defense, another affirmative defense which the Plaintiff is not required to predict. Motion at 6, note 1.

Regardless, the Defendant contends, without identifying any portion of the Complaint, that the Plaintiff failed to comply with Rule 8(a)(2). The Defendant has not explained in what way the statement of the case is lacking.

However, even if the 22 relevant paragraphs of the Complaint do somehow fail to state an IDEA violation, that fact would not strip this Court of subject matter jurisdiction, as the Defendant contends. Motion at 7. Neither of the two cases cited by the Defendant stands for this bizarre proposition. Were the Complaint deficient, the Court might dismiss it for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). The Defendant does not request dismissal on such grounds and has made no showing that the Plaintiff has failed to state her claim appropriately, perhaps because it is seeking to avoid the more lenient standard by which 12(b)(6) motions are determined.[9]

## IV. DISMISSAL IS AN INAPPROPRIATE REMEDY

Even were the Defendant's arguments meritorious, dismissal would still be an inappropriate remedy for its perceived insufficiencies in the Plaintiff's Complaint. See e.g. M.K. v. Tenet, 99 F. Supp. 2d 12, 19 (D.D.C. 2000)("[T]he defendants may move for a more definite statement of the plaintiff's claims under Federal Rule of Civil Procedure 12(e)…Because any indefiniteness can be remedied by this less drastic means, the court declines to dismiss the complaint for indefiniteness at this juncture")(internal citation omitted).

The Defendant could have obtained the information it considers lacking through a motion for a more definite statement, a two-minute telephone call or a one sentence e-mail. Since the District of Columbia was both present at and party to the Plaintiff's administrative proceedings,

[9] "In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, unlike resolving a motion under Rule 12(b)(1), the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations."
Openshaw v. Consol. Eng'g Servs., 2007 U.S. Dist. LEXIS 26280; No. 06-1884 (CKK), Memorandum Opinion at 4 (D.D.C. 2007).

it could also have consulted its own records, as the Plaintiff's daughter is a school-aged child living within its jurisdiction. Under the circumstances, such an inquiry would have been quite reasonable before making the representation to this Court that the Plaintiff had not exhausted her administrative remedies, particularly since the Complaint contains a clear statement that she had., as the Defendant acknowledges, her Complaint stated:

The Defendant, instead of making any reasonable inquiry into the allegations in the Plaintiff's Complaint, has now moved for dismissal. Despite the Court's extension of its time to respond to the Complaint, the Defendant has now shown its apparent unwillingness to make any inquiry into the facts of this case or to confer with Plaintiff's counsel, since either of those efforts would have immediately yielded the portions of the administrative record of which the Defendant claims to have no knowledge. Under the circumstances of this case, dismissal is inappropriate regardless of the Court's view of the Complaint.

## IV. THIS COURT HAS JURISDICTION OVER THE PLAINTIFF'S COMPLAINT

As addressed above, failure to exhaust is an affirmative defense. As addressed above, the Defendant has offered nothing to raise any question regarding exhaustion. Nonetheless, in the interest of efficiency the Plaintiff submits Exhibit 1, which make clear that the Plaintiff has exhausted her administrative remedies.The Plaintiff has exhausted her available administrative remedies and this Court has jurisdiction over the claims in her Complaint. With this information easily available, the Defendant's motion should be denied. More importantly, it should never have been filed in the first place.

Respectfully submitted,
/s/__________________
Douglas Tyrka, #467500
Tyrka & Associates, LLC
1726 Connecticut Ave. NW, Suite 400
Washington, DC 20009

(ph) (202) 265-4260
(f) (202) 265-4264

**District of Columbia Public Schools**
***State Enforcement Investigative Division***
**STUDENT HEARING OFFICE**
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
FAX: (202) 442-5556

***FACSIMILE SHEET***

Date: April 19, 2007

TO: Douglas Tyrka

FROM: STUDENT HEARING OFFICE

RE: D[redacted] J[redacted]

TOTAL NUMBER OF PAGES, INCLUDING COVER: 14

COMMENTS:

***CONFIDENTIALITY NTOICE:*** The information accompanying this facsimile is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the content of this telecopied information is strictly prohibited.

07-1260(RBW)

Exhibit 1

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
*State Enforcement and Investigation Division*
CONFIDENTIAL
**Coles B. Ruff, Jr., Due Process Hearing Officer**

2007 APR 18 PM 4: 35
DCPS STUDENT HEARING OFFICE

| | |
|---|---|
| In the Matter of J[redacted] D[redacted]<br>Date of Birth: [redacted] 1994<br>("Student")<br><br>Petitioner,<br><br>v.<br><br>District of Columbia Public Schools<br>("DCPS" or "District")<br>School: Sousa JHS<br>Respondent. | **IMPARTIAL DUE PROCESS**<br><br>**HEARING OFFICER'S DECISION**<br><br>Hearing Dates: March 29, 2007<br>April 5, 2007<br><br>Held at: 825 North Capitol St. NE<br>Washington, DC |

Counsel for Student: Douglas Tyrka, Esq.
1726 Connecticut Ave., NW #400
Washington, DC 20001

Counsel for DCPS: Daniel McCall, Esq.
Office of General Counsel
825 North Capitol St. NE
Washington, DC 20002

**JURISDICATION:**

A Due Process Hearing was convened on March 29, 2007, and concluded April 5, 2007, at the headquarters of the District of Columbia Public Schools, 825 North Capitol Street, NE, Washington, DC 20002, in response to a due process complaint submitted by counsel for the student and parent filed January 31, 2007. The hearing was conducted and this decision was written pursuant to the *Individuals with Disabilities Act* (I.D.E.A.), P.L. 101-476, as amended by P.L. 105-17 and the *Individuals with Disabilities Education Improvement Act of 2004* (I.D.E.I.A.), the Rules of the Board of Education of the District of Columbia and the DC Appropriations Act, Section 145, effective October 21, 1998.

**DUE PROCESS RIGHTS:**

The parent's counsel waived a formal reading of the due process rights.

## SUMMARY OF THE RELEVANT EVIDENCE:

The Hearing Officer considered the representations made on the record by each counsel, the testimony of the witness(es) and the documents submitted in the parties' disclosures (JD1-10 and DCPS 1-21)[1] which were admitted into the record.

The parent's counsel filed a post hearing motion alleging DCPS' response to the complaint was insufficient. The Hearing Officer concludes that the DCPS' response was sufficient to put the opposing counsel on notice of the defenses to the allegations in the complaint. Therefore, the Hearing Officer denies the second motion to dismiss.[2]

## FINDINGS OF FACT [3]:

1. The student is currently age 12 and has been determined to be eligible for special education and related services with a disability classification of learning disabled (LD). The student attends Sousa Middle School (Sousa) and is in the seventh grade. (DCPS 1, 2, 3)

2. DCPS conducted a psycho-educational evaluation on March 6, 2002, when the student was age 7 and in the second grade. The evaluation indicated the student cognitive ability was in the low average range and academically he was operating on a first grade level. (JD 7)

3. The student's last functional behavior assessment (FBA) was conducted March 10, 2003. (JD 8)

4. The student's last clinical psychological evaluation was conducted on March 28, 2003. The evaluation did not indicate the student had specific emotional concerns and it did not recommend the student for a classification of emotional disturbance (ED); but it suggested the multi-disciplinary team (MDT) make a determination about that classification when there was more information regarding the student's behaviors in the classroom. The student was never classified as ED. (JD 9)

5. On March 17, 2006, DCPS convened a MDT/individualized educational program (IEP) meeting. The parent did not attend the meeting. There was a confirmation of meeting notice addressed to the parent indicating the meeting would be held on that date, but the notice was also dated March 17, 2006, and there was no indication it was mailed to the parent prior to the meeting.

---

[1] DCPS attempted to submit additional documents with its response to the complaint that the Hearing Officer directed DCPS to file prior to the hearing reconvening on the second date. The documents were not admitted into the record by the Hearing Officer. Consistent to DCPS' request, the Hearing Officer acknowledges DCPS presented the documents as an "offer of proof.".

[2] The parent's counsel filed a pre-hearing motion for default which was denied prior to the hearing.

[3] The evidence that is the source of the finding of fact is noted within a parenthesis following the finding.

6. DCPS personnel who attended the March 17, 2006, meeting included, Sousa's special educational coordinator, Mr. Robert Woodham, Ms. Vanessa Countee, the social worker who delivers psychological services to the student and the student's special education and general education teachers. (JD 5, DCPS 1)

7. Mr. Woodham made several telephone calls to the parent attempting to have her attend the student's 2006 IEP meeting. He got no response from the parent. Consequently, the 2006 MDT/IEP meeting was convened without the parent being present. The parent has made no communication with Ms. Woodham since that MDT meeting. (Mr. Woodham's testimony)

8. Ms. Countee developed a goal and short term objectives page for the student's 2006 IEP which she used to deliver the psychological services to the student. She attended the student's 2006 MDT meeting the developed a social/emotional goal for that meeting. (Ms. Countee's testimony, DCPS 1)

9. The 2006 IEP prescribed the following weekly services: 12.5 hours of specialized instruction and 30 minutes of psychological services.[4] The IEP cited, on the present levels of performance page, scores from a Woodcock Johnson assessment conducted March 9, 2006. The scores indicated the student was functioning on the third grade level in math, reading and written expression. (Mr. Woodham's testimony, JD 5, DCPS 1)

10. The student's report card for the first and second advisory of school year (SY) 2006-07 indicates the student had passing grades in the first and second advisory in all but one class, Art. The student received "A"s in three classes in the first advisory. There were three subjects on the report card that indicated the student exhibited poor behavior in those classes. However, there are two subjects that indicated the student had good participation and good behavior. The report card indicates the student takes the following special education classes: English Resource and Mathematics Resource. (DCPS 3)

11. The parent's counsel filed the due process complaint January 30, 2007. (JD 3)

12. DCPS conducted a new psycho-educational evaluation on February 23, 2007. The student's cognitive ability was in the average range. The evaluation indicates he is operating on third grade level in reading, writing and math. (JD 10)

13. On March 14, 2007, DCPS convened a MDT/IEP meeting and updated the student's IEP. The parent did not attend the meeting. An educational advocate attended on the parent's behalf. Mr. Woodham and Ms. Countee attended along

[4] The parent's counsel alleged the IEP also prescribed 19 hours of specialized instruction in a general education setting. However, the Hearing Officer credited Mr. Woodham's testimony that the 19 hours on the IEP were not meant by the MDT to be special education services but actually reflects the hours the student would be in general education.

with the student's special education and general education teachers and a DCPS school psychologist. (DCPS 2)

14. The student's teachers indicated at the meeting the student's academic performance was satisfactory and that he displayed no significant behavioral difficulties. The advocate disagreed and indicated the student needed a more restrictive environment. The DCPS members of the team agreed to maintain the same level of services for the student as the previous IEP and that the services could be delivered at Sousa. A behavior intervention plan (BIP) was added to the IEP. There was no indication a new FBA was conducted to develop the BIP. (DCPS 2)

15. The social/emotional goal and objectives in the 2007 IEP were altered slightly from the previous goal and objectives. (Ms. Countee's testimony, DCPS 2)

16. The student has displayed social/emotional progress in the past year. He has begun to participate more in group counseling and is better able to express his feelings and cope with interventions. The student has displayed development in maturity. Ms. Countee has been able to provide the student services consistently. The parent has not attended any parent/teacher conferences or telephoned Ms. Countee to check on the student's progress. (Ms. Countee's testimony, DCPS 1 – meeting notes)[5]

17. Mr. Woodham is responsible for ensuring services are provided to the student. He observes the student's classroom from time to time and regularly checks the encounter tracking forms and notes to ensure services are being provided to the student. Mr. Woodham has also observed special education services being delivered to the student.[6] (Mr. Woodham's testimony)

18. Mr. Woodham is in regular communication with the student's teachers relative to his progress. The student received specialized instruction from a certified special education teacher and he is making academic progress. He has maintained passing grades in the last two school years. The student has not been suspended and demonstrates a few behavior issues but nothing abnormal. The MDT found there was no reason to increase the student's services at his most recent IEP meeting. (Mr. Woodham's testimony)

---

[5] The parent's counsel objected to the Ms. Countee's testimony as to the services provided and or progress the student made based upon DCPS' failure to produce and/or disclose encounter tracking forms and/or progress reports prior to the hearing. The Hearing Officer overruled the objection and allowed the testimony.

[6] The parent's counsel objected to Mr. Woodham's testimony as to the services provided and/or the student's progress because of DCPS failures to produce and/or disclose encounter tracking forms and/or progress reports prior to the hearing. The Hearing Officer overruled the objection and allowed the testimony.

19. The student has been accepted to High Road School (High Road). High Road is a full time special education placement that can provide the student specialized instruction and related services by certified teacher and related service providers. (Mr. Clarke's testimony)

**ISSUE(S):** [7]

Did DCPS deny the student FAPE by:

1. Failing to timely conduct reevaluations in all areas of disability? Specifically, the parent alleges DCPS did not timely conduct a psycho-educational, a clinical psychological and functional behavior assessment (FBA).
2. Failing to develop an appropriate IEP? The parent alleges the March 17, 2006, IEP is inappropriate because (1) the parent was not present at the IEP meeting, (2) there was no psychologist participating in the IEP meeting, (3) the IEP did not prescribe sufficient hours of specialized instruction and (3) did not include social/emotional or counseling goals and objectives.
3. Failing to provide the student an appropriate placement, based on the student's academic regression? The parent alleges Sousa is inappropriate.
4. Failing to provide the student the specialized instruction and related services prescribed in the student's IEP?

**CONTENTIONS OF THE PARTIES:**[8]

The parent's counsel asserted the following:

1. The 2006 IEP does not contain social/emotional goals and objectives.
2. The student's psycho-educational and clinical psychological and FBA were expired.
3. At the March 17, 2006, IEP meeting there was no psychologist present.
4. A psychologist is required to review a psycho-educational evaluation or either DCPS did not use the psycho-educational evaluation to develop the IEP.
5. An inference should be made that the student did not receive appropriate services or make academic progress because the DCPS has not provided any encounter tracking forms or any IEP report cards or progress reports.
6. There has been a significant regression in the student scores between the two psycho-educational evaluations.
7. The March 2006 IEP indicates the student is to receive 19 hours of specialized instruction in a general education setting (inclusion) and 12.5 hours of specialized instruction in a special education setting.

---

[7] The alleged violation(s) and/or issue(s) raised in the complaint may or may/not directly correspond to the issue(s) outlined here. However, the issue(s) listed here were reviewed during the hearing and clarified and agreed to by the parties as the issue(s) to be adjudicated.

[8] The contentions are the arguments made by opposing counsel and do not reflect any findings or conclusions made by the Hearing Officer.

8. The student's academic regression is proof the placement is inappropriate.

DCPS counsel asserted the following:

1. There were attempts to have the parent to participate in the March 2006 IEP meeting.
2. The FBA and the clinical are not required reevaluations.
3. The psycho-educational evaluation has been completed.
4. The student has been provided services and the placement is appropriate.
5. There is no right to an inference that services were not provided because documents were not provided or presented.
6. Without expert testimony the student assessments in the psycho-educational evaluation alone are not sufficient proof of regression.

**CONCLUSIONS OF LAW:**

Pursuant to IDEIA Sec. 1415 (f)(3)(E)(i) a decision made by a hearing officer shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education (FAPE).

Pursuant to IDEIA § 1415 (f)(3)(E)(ii) in matters alleging a procedural violation a hearing officer may find that a child did not receive FAPE only if the procedural inadequacies impeded the child's right to FAPE, significantly impeded the parent's opportunity to participate in the decision making process regarding provision of FAPE, or caused the child a deprivation of educational benefits.

Pursuant to 5 DCMR 3030.3 the burden of proof is the responsibility of the party seeking relief.[9] In this case the parent is seeking relief and has the burden of proof that the action and /or inaction or proposed placement is inadequate or adequate to provide the student with FAPE.

**1. Did DCPS deny the student FAPE by failing to conduct timely reevaluations of the student in all areas of disability? Conclusion: The parent's counsel sustained the burden of proof.**

The parent alleges DCPS did not timely conduct a psycho-educational, clinical psychological and FBA.

The student's previous psycho-educational was conducted in March 2002. Consequently, that reevaluation should have been conducted within three years, by March 2005. Although it appears the student was given some portion of the Woodcock Johnson in 2006 that evaluation does not appear to have been a full psycho-educational. The student

[9] Based solely upon the evidence presented at the hearing, an impartial hearing officer shall determine whether the party seeking relief presented sufficient evidence to meet the burden of proof that the action and /or inaction or proposed placement is inadequate or adequate to provide the student with FAPE.

cognitive abilities seem to have improved some between the two psycho-educational evaluations; however, the academic performance assessments indicated the student has only made a two year grade progress in the five years that have elapsed between the evaluations. Because DCPS did not conduct a full psycho-educational within the required three year period the Hearing Officer concludes the student was denied FAPE. Although the psycho-educational has now been conducted, given the student's apparent two year academic progress as measured by the psycho-educational evaluation, the Hearing Office will direct as a remedy for this denial of FAPE that the MDT convene to review the student's assessments and determine if additional assessments are warranted.[10]

Although there was a clinical psychological evaluation conducted in 2002 there is no indication that a clinical psychological is one of the evaluations that was necessary to conduct again. That evaluation did not indicate the student showed signs of an ED classification. The most recent psycho-educational, however, did not assess the student in social emotional areas. Nonetheless, there have been no indications the student is experiencing significant behavior difficulties or any evidence the student needs to now be evaluated for the ED classification. It should also be noted that other than the mention of the clinical psychological in the complaint there does not appear to have been a request for a clinical psychological from any of the student's teachers, service providers, the parent or the advocate to assess for an additional disability classification.

A FBA was conducted for the student in 2003. No BIP was a part of the 2006 IEP that was submitted in the record. However, a BIP was developed in March 2007 and is a part of the student's most recent IEP. The Hearing Officer takes administrative notice that in certain provisions of IDEIA, particularly related to discipline, a FBA usually precedes development of a BIP. However, the Hearing Officer is not aware of any provision that strictly precludes a BIP from being developed without a recent FBA or that requires a FBA be conducted every three years. Therefore, the Hearing Officer does not conclude that the failure to conduct a recent FBA is a denial of FAPE.

**2. Did DCPS deny the student FAPE by failing to develop an appropriate IEP?**
**Conclusion: The parent's counsel sustained the burden of proof.**

The parent has alleged the March 17, 2006, IEP is inappropriate because: (1) the parent was not present at the IEP meeting, (2) there was no psychologist participating in the IEP meeting, (3) the IEP does not prescribe sufficient hours of specialized instruction and (3) does not include a social/emotional or counseling goal and objectives.

Although the Hearing Officer credits Mr. Woodham's testimony that he made telephone calls to the parent in an attempt to have her attend the 2006 IEP, IDEIA requires a LEA to make diligent and documented efforts to ensure a parent participates in an IEP

[10] Although a school psychologist was present at the most recent IEP meeting is was not clear from the MDT notes that the most recent psycho-educational was reviewed with the team. The notes indicate the psychologist addressed the student's behavior and/or social/emotional concerns, but is not clear from the notes whether the student's academic assessments were discussed.

meeting. Although there was a confirmation of meeting notice in the record there was no indication that notice was mailed to the parent or a letter of invitation were sent.

It would have been helpful to have testimony from the parent as to whether she was contacted for the 2006 meeting. Nonetheless, the Hearing Officer concludes that Mr. Woodham's testimony alone, without supporting documentation of the repeated and various methods used to attempt to convince the parent to attend and participate in the meeting as outlined in IDEIA, was not sufficient to justify proceeding with the IEP meeting in the parent's absence.

The Hearing Officer concludes that proceeding with the 2006 IEP meeting without the parent present and without sufficient documented attempts to ensure her presence significantly impeded the parent's opportunity to participate in the decision making process regarding provision of FAPE.[11] Although the parent also did not attend the most recent IEP meeting she was represented by an advocate.

There was no evidence presented that a psychologist was required to be present at the 2006 IEP meeting. There was no indication that a psychological evaluation was reviewed at that meeting or needed to be reviewed. Therefore, the Hearing Officer concludes the absence of a psychologist at the IEP meeting did not invalidate the IEP or make it inappropriate.

There was insufficient evidence presented that the student was in need of more specialized instruction than prescribed in the IEP. The student's academic progress as reflected in his grade level performance in his 2002 and 2006 psycho-educational alone was insufficient to demonstrate that the student is in need of more specialized instruction, particularly given the student's academic performance as reflected in his report card, his teachers' comments at the MDT meeting and to Mr. Woodham.

The Hearing Officer credits Ms. Countee's testimony that she developed social/emotional goal(s) and objectives at the 2006 IEP meeting and that she used those in providing the student services. Therefore, the Hearing Officer concludes the 2006 IEP had social/emotional goals that were simply not included in the copies of the student's IEP that were disclosed.

**3. Did DCPS deny the student FAPE by failing to provide the student an appropriate placement based on the student's academic regression? Conclusion: The parent's counsel did not sustain the burden of proof.**

The student's most recent psychological evaluation indicates he is currently operating at the third grade level. The student has apparently made some academic progress since his previous psycho-educational evaluation, albeit only two years of progress in the five

---

[11] The Hearing Officer did not conclude that the burden to "disprove" the violation was upon DCPS. Rather, the documentation of the parent's non participation in the meeting, absent proof of diligent efforts to ensure her participation, was sufficient proof by parent's counsel to meet the burden on this issue.

years between the two evaluations. The student's grades on his report card, however, indicate that he is performing well in both his special education and general education classes.

The Hearing Officer cannot, based on the scores in the psycho-educational evaluation alone, conclude that the student's placement is inappropriate. On the contrary, Mr. Woodham's credibly testified regarding the student's performance based on his observations of the student and communication with his teachers. His testimony is consistent with the performance evidenced in the report card. In addition, the March 2007 MDT meeting notes indicate the student's teachers stated his academic performance and behavior in class was satisfactory. Therefore, the Hearing Officer does not conclude that Sousa is an inappropriate placement for the student.

**4. Did DCPS deny the student FAPE by failing to provide the student the specialized instruction and related services prescribed in the student's IEP? Conclusion: The parent's counsel did not sustain the burden of proof.**

The Hearing Officer credits both Mr. Woodham's and Ms. Countee's testimony that the student was provided the services prescribed by his IEP at Sousa in the last two school years. The student's report card reflects that he is currently taking two special education classes. In addition, the March 2007 MDT meeting notes reflect that the student's special education teacher stated his academic performance and behavior in class was satisfactory. Based on this evidence the Hearing Officer concludes the student's IEP is being implemented at Sousa and he is receiving the services prescribed therein.

Although the parent has requested the student be placed at High Road. and there is evidence the student can gain educational benefit there, the Hearing Officer does not conclude that the denials of FAPE adjudicated herein warrant a remedy of placement at High Road.

**ORDER:**

1. DCPS shall within fifteen (15) school days of the issuance of this Order, convene a multi-disciplinary team meeting to review the student's evaluations and determine if additional evaluations are warranted.

2. DCPS and the parent's counsel shall make diligent efforts to ensure the meeting is scheduled so that the parent can attend and the parent is sufficiently notified and encouraged to attend the MDT meeting.

3. Scheduling of the MDT meeting is to be arranged through parent's counsel.

4. DCPS will be given a day for a day extension of any of the prescribed time frames in this Order for any delay caused by the student, the parent and/or their representative(s).

(In the Matter of JD HOD: April 18, 200..

**APPEAL PROCESS:**

This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 90 days of the rendering of this decision.

**Coles B. Ruff, Esq.**
**Hearing Officer**
**Date: April 18, 2007**

Issued: 4/19/07

10

(In the Matter of JD HOD; April 18, 200',

**In the MATTER OF J[redacted] D[redacted] V. DCPS**

**INDEX OF EXHIBITS**

| EXHIBIT # | IDENTIFICATION | ADMITTED |
|---|---|---|
| ID 1-10 | Parent's Disclosures | Yes |
| DCPS 1-21 | DCPS Disclosures | Yes |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | * A detailed list of the documents disclosed is contained in the parties' disclosure notices | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

11

(In the Matter of JD HOD: April 18, 2007)

**In the MATTER OF J D V. DCPS**

**RECORD OF PROCEEDING**

| DATE | DESCRIPTION |
|---|---|
| 1/31/07 | Request for Due Process |
| | Notice of Pre-Hearing Conference (as applicable) |
| 3/14/07 | Notice of Due Process Hearing |
| | SETS Disposition Form |
| | Transcripts or audio tapes of hearing |

12

# INDEX OF NAMES

**In the MATTER OF J[redacted] D[redacted] V. DCPS**

| | |
|---|---|
| Assistant Superintendent, Special Education (or Director) | |
| Special Education Coordinator | Mr. Robert Woodham |
| School Psychologist | |
| Regular Education Teacher | |
| DCPS Social Worker | Ms. Vanessa Countee |
| Speech/Language Therapist | |
| Occupational Therapist | |
| Physical Therapist | |
| Private Psychologist | |
| Child and Child's DCPS ID # or SSN (insert ID # or Case Number on each page of the HOD vs. child's name) | |
| Child's Parent(s) (specific relationship) | |
| Child/Parent's Representative | Douglas Tyrka, Esq. |
| School System's Representative | Daniel McCall, Esq. |
| Parent's Educational Advocate | |
| Assistant to Parent's Counsel | Mr. Mike Tchomi |
| High Road School | Mr. David Clarke |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**Douglas Tyrka**

**From:** "Merkowitz, Maria (OAG)" <maria.merkowitz@dc.gov>
**To:** "'Douglas Tyrka'" <tyrka@tyrkalaw.com>
**Sent:** Tuesday, July 24, 2007 5:03 PM
**Subject:** Julette Davis

Doug

Could I please have an extension of time in the Davis case? I will be out of the office till August 3rd. Can I have 20 days after that?
Maria

:hibit 2

**Douglas Tyrka**

**From:** "Douglas Tyrka" <tyrka@tyrkalaw.com>
**To:** "Merkowitz, Maria (OAG)" <maria.merkowitz@dc.gov>
**Sent:** Wednesday, July 25, 2007 9:13 AM
**Subject:** Re: Julette Davis

Sure, but can you order the record right away (or at least right away when you get back)?

---

This electronic message transmission contains information from the law office of Douglas Tyrka which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

If you have received this electronic transmission in error, please notify us by telephone (202-332-0038) or by electronic mail (mail@tyrkalaw.com) immediately.

----- Original Message -----
**From:** Merkowitz, Maria (OAG)
**To:** 'Douglas Tyrka'
**Sent:** Tuesday, July 24, 2007 5:03 PM
**Subject:** Julette Davis

Doug

Could I please have an extension of time in the Davis case? I will be out of the office till August 3rd. Can I have 20 days after that?
Maria

**Douglas Tyrka**

**From:** "Merkowitz, Maria (OAG)" <maria.merkowitz@dc.gov>
**To:** '"Douglas Tyrka"' <tyrka@tyrkalaw.com>
**Sent:** Wednesday, July 25, 2007 9:41 AM
**Subject:** RE: Julette Davis

Yes - Thanks - Hope surgery goes well

---

**From:** Douglas Tyrka [mailto:tyrka@tyrkalaw.com]
**Sent:** Wednesday, July 25, 2007 9:14 AM
**To:** Merkowitz, Maria (OAG)
**Subject:** Re: Julette Davis

Sure, but can you order the record right away (or at least right away when you get back)?

---

This electronic message transmission contains information from the law office of Douglas Tyrka which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

If you have received this electronic transmission in error, please notify us by telephone (202-332-0038) or by electronic mail (mail@tyrkalaw.com) immediately.

> ----- Original Message -----
> **From:** Merkowitz, Maria (OAG)
> **To:** 'Douglas Tyrka'
> **Sent:** Tuesday, July 24, 2007 5:03 PM
> **Subject:** Julette Davis
>
> Doug
>
> Could I please have an extension of time in the Davis case? I will be out of the office till August 3rd. Can I have 20 days after that?
> Maria

:hibit 4

**Douglas Tyrka**

**From:** "Merkowitz, Maria (OAG)" <maria.merkowitz@dc.gov>
**To:** "'Douglas Tyrka'" <tyrka@tyrkalaw.com>
**Sent:** Wednesday, July 25, 2007 11:55 AM
**Subject:** RE: Julette Davis

Could I please have the name of the student and her date of birth?

**From:** Douglas Tyrka [mailto:tyrka@tyrkalaw.com]
**Sent:** Wednesday, July 25, 2007 9:14 AM
**To:** Merkowitz, Maria (OAG)
**Subject:** Re: Julette Davis

Sure, but can you order the record right away (or at least right away when you get back)?

This electronic message transmission contains information from the law office of Douglas Tyrka which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

If you have received this electronic transmission in error, please notify us by telephone (202-332-0038) or by electronic mail (mail@tyrkalaw.com) immediately.

> ----- Original Message -----
> **From:** Merkowitz, Maria (OAG)
> **To:** 'Douglas Tyrka'
> **Sent:** Tuesday, July 24, 2007 5:03 PM
> **Subject:** Julette Davis
>
> Doug
>
> Could I please have an extension of time in the Davis case? I will be out of the office till August 3rd. Can I have 20 days after that?
> Maria

:hibit 5

**Douglas Tyrka**

**From:** <tyrka@tyrkalaw.com>
**To:** <tyrka@tyrkalaw.com>
**Sent:** Thursday, July 26, 2007 11:54 AM
**Subject:** Julette Davis (fwd)

----------Forwarded message ----------
References: <5A280F75DE98F642A75B2D44E97DFA31093C2BBD@DC_OCC_EXCH.dc.gov>
In-Reply-To: <5A280F75DE98F642A75B2D44E97DFA31093C2BBD@DC_OCC_EXCH.dc.gov>
From: tyrka@tyrkalaw.com
To: "Merkowitz, Maria (OAG)" <maria.merkowitz@dc.gov>
Subject: Re: Julette Davis
Date: Thu, 26 Jul 2007 08:48:28 -0700
Mime-Version: 1.0
Content-Type: text/plain; format=flowed; charset="iso-8859-1"
Content-Transfer-Encoding: 7bit

James Davis; 12/17/94. Thanks for the well wishes.

Merkowitz, Maria (OAG) writes:

> Could I please have the name of the student and her date of birth?
>
>
>
> ______
>
> From: Douglas Tyrka [mailto:tyrka@tyrkalaw.com]
> Sent: Wednesday, July 25, 2007 9:14 AM
> To: Merkowitz, Maria (OAG)
> Subject: Re: Julette Davis
>
>
>
> Sure, but can you order the record right away (or at least right away when
> you get back)?
>
> ________________________________________
> This electronic message transmission contains information from the law
> office of Douglas Tyrka which may be confidential or privileged. The
> information is intended to be for the use of the individual or entity named
> above. If you are not the intended recipient, be aware that any disclosure,
> copying, distribution or use of the contents of this information is
> prohibited.
>
> If you have received this electronic transmission in error, please notify us

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **JULETTE DAVIS,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 07-1260 (RBW)** |
| **v.** | ) | |
| **DISTRICT OF COLUMBIA,** | ) | |
| **Defendant.** | ) | |

**ORDER**

On consideration of the Plaintiff's Opposition to the Defendant's Motion to Dismiss, it is hereby

ORDERED that the Defendant's Motion to Dismiss is **DENIED.**

Reggie B. Walton
United States District Judge